DECISION AND JOURNAL ENTRY.
{¶ 1} Appellant, Jerome Carter, appeals from his conviction in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On December 2, 2002, the Summit County Grand Jury indicted Mr. Carter for assault of a peace officer while in the performance of official duties, in violation of R.C. 2903.13(A); resisting arrest, in violation of R.C. 2921.33(B); and disorderly conduct, in violation of R.C. 2917.11(A)(1). The matter proceeded to trial before a jury and Mr. Carter was found guilty on all counts. Mr. Carter was sentenced to serve one year in prison for the crime of assault, and thirty days on each of the other two counts, to be served concurrently.
 {¶ 3} Mr. Carter has timely appealed from the judgment of conviction and has assigned one error for review.
 Assignment of Error
Appellant's conviction for assault was against the manifest weight of the evidence.
 {¶ 4} In his sole assignment of error, Mr. Carter challenges his conviction for assault of a peace officer as being against the weight of the evidence. He has not challenged his convictions for resisting arrest or disorderly conduct. In his supporting argument, he claims that the State was obligated to prove that he had some degree of knowledge or awareness that the victim of his assault was a peace officer, and further claims that no evidence was presented on that issue. For the reasons which follow, we find the argument to be without merit.
{¶ 5} To determine whether a conviction is against the manifest weight of the evidence
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice the conviction must be reversed and a new trial ordered." Statev. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 6} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of an issue more than another. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 7} Mr. Carter was charged with assault of a peace officer under R.C. 2903.13, which provides, in pertinent part:
"(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
* * *
"(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree.
* * *
"(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 8} Generally, assault is a misdemeanor of the first degree. However, R.C. 2903.13(C)(3) provides that where the victim of the offense is a peace officer, engaged in the performance of his or her official duties, the crime is elevated to a felony of the fourth degree. The trial judge in the case at bar instructed the jury that a "peace officer includes a sheriff, deputy sheriff, member of the organized police department of any municipal corporation, and a member of a police force employed by a metropolitan housing authority." See R.C. 2935.01(B).
 {¶ 9} Mr. Carter contends, without citing any authority in support, that the State is obligated to prove that he had some level of knowledge or awareness as to the fact that the victim of his assault was a peace officer. Mr. Carter also contends that there was no evidence presented as to such knowledge or awareness at the trial of this matter, and that his conviction on this count is therefore not supported by the weight of the evidence.
 {¶ 10} This Court has previously held that the State is not required to demonstrate that the accused knows or is aware of the fact that the victim was a peace officer, in order to elevate the offense of assault pursuant to R.C. 2903.13(A) to the offense of assault of a peace officer pursuant to R.C. 2903.13(C)(3). State v. Freeman (Aug. 2, 2000), 9th Dist. No 2999-M. In that decision, this Court went on to state:
"The General Assembly has articulated the elements of R.C. 2903.13 with sufficient clarity to indicate that the victim's status as a police officer shall elevate the criminal offense of assault from a misdemeanor of the first degree to a felony of the fourth degree regardless of whether or not the accused specifically knows of the victim's status as a peace officer." Id.
See, also, State v. Koreny (Apr. 12, 2001), 8th Dist. No. 78074, (holding that R.C. 2903.13(C)(3) does not contain a mens rea requirement); State v. Ridley (Oct. 27, 1997), 5th Dist. No. 1997CA00098, (holding that it is not necessary that the offender have knowledge that the victim was a police officer to enhance the offense of felonious assault with a peace officer specification); State v. Cantrell
(Mar. 24, 1989), 2nd Dist. No. 11030, (holding that "defendant's knowledge that the victim is a peace officer is not required in order to invoke the enhanced penalty under R.C. 2903.11"). We find accordingly that the State was not required to prove that Mr. Carter knew or was aware that the victim of the assault was a peace officer. It is sufficient that the evidence establish that the victim of such an assault was, in fact, a peace officer acting in the performance of his official duties.
 {¶ 11} Because the State is not obligated to prove that Mr. Carter knew his victim was a peace officer, there is clearly no error in the absence of such proof. However, to the extent that Mr. Carter argues that the weight of the evidence fails to support a finding that the victim was a police officer acting in the performance of his official duties, we similarly find the argument to be without merit.
 {¶ 12} In the present case, Patrick James Leonard testified he was a member of the Akron Police Department and also worked a second job, providing security for the Akron Metropolitan Housing Authority ("A.M.H.A."). Officer Leonard stated that, on the evening of November 16, 2002, he was on duty for A.M.H.A. and was wearing a uniform, including a jacket with a badge.
 {¶ 13} Officer Leonard testified that he had just completed a check of one of the A.M.H.A. buildings at midnight, and was walking toward his vehicle when he noticed the presence of another vehicle behind his own. As he approached the other vehicle, he observed that it was occupied by two men. He stated that they were arguing and saw the passenger strike the driver. As Officer Leonard approached the vehicle, he asked, "What's going on?" According to Officer Leonard, at that moment he had the attention of both men. They both stopped what they were doing and looked at him. Officer Leonard stated that the passenger, later identified as Mr. Carter, got out of the car and attacked him. According to Officer Leonard, Mr. Carter was "swinging both fists" at him and appeared to be in a "blind rage."
 {¶ 14} Officer Leonard testified that he identified himself as a police officer, ordered Mr. Carter to stop, and told him that he was under arrest, but Mr. Carter continued attacking him. Officer Leonard attempted to call for back-up on his radio, but the radio broke in the midst of his call. Officer Leonard eventually wrestled Mr. Carter to the ground, but was unable to secure control over him.
 {¶ 15} At that time, two young men in a passing vehicle offered assistance to the officer. Officer Leonard accepted their offer of help and, with them, was able to handcuff and secure control over Mr. Carter. Officer Leonard reported that he received cuts and scratches to the inside of his upper and lower lips, the top of his head, knuckles and knees, for which he later received medical treatment at City Hospital. Photographs of the officer's injuries were also admitted into evidence.
 {¶ 16} Officer Leonard's testimony was corroborated through the testimony of Eddie Lee Boyd, a back-up officer; Myra Hale, a resident of A.M.H.A.; and the two passers-by, John Nicoleno, Jr. and Brian Wagner. First, Officer Boyd testified that he responded to a call to assist Officer Leonard. Next, Ms. Hale testified that, from the window of her apartment, she observed two men rolling around in the driveway. She stated one of them was wearing a police uniform and she called 911 to obtain assistance for him. Mr. Nicoleno testified that he initially observed an officer and another man, whom he subsequently identified as Mr. Carter, wrestling on the ground. Mr. Nicoleno also observed Mr. Carter strike Officer Leonard in the mouth. Mr. Nicoleno then told the driver of his vehicle to turn around and offered assistance to Officer Leonard. Finally, Mr. Wagner testified that Mr. Nicoleno had noticed "a guy fighting with the cop" and they decided to turn around. Mr. Wagner stated that he saw a uniformed officer sitting on a man, later identified to be Mr. Carter. He helped the officer secure Mr. Carter.
 {¶ 17} For his part, Mr. Carter testified that his brother drove him to the Nimmer housing complex to deliver some food to his mother. They were sitting in the car, and Mr. Carter was talking to his brother. When he got out of the car to get the food from the backseat, he observed — what he variously described as — a flashing light, a flashlight, or a flash of light. He put his hands up to block the light and claims someone then dove into him. Mr. Carter testified that he did not know that the individual was a police officer until he was taken downtown, and denies swinging at him. He claims he just held onto the person.
 {¶ 18} We conclude that the State is not required to prove that Mr. Carter had knowledge or awareness that the victim was a peace officer. Moreover, upon review of the entire record, we find that the weight of the evidence supports a conclusion that Officer Leonard was a peace officer in the exercise of his official duties at the time of the incident in question.
 {¶ 19} Mr. Carter's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
SLABY, P.J. and WHITMORE, J. concur.